UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT CROSBY,

                Plaintiff,              Case No.: 11-14640

v.                                          Hon. Gerald E. Rosen

DAVID ABBOT,

                Defendant.

_____/

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

At session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on August 23, 2013

PRESENT: Honorable Gerald E. Rosen
Chief Judge, United States District Court

**I.  INTRODUCTION**

     This Section 1983 action arises out of the tasing of Plaintiff Robert Crosby by Defendant David Abbot, a Macomb County Deputy Sheriff.  By motion filed on October 31, 2012, Defendant seeks entry of summary judgment in his favor claiming that Plaintiff has failed to demonstrate the deprivation of a cognizable constitutional right necessary to establish a claim for damages under 42 U.S.C. § 1983.  Specifically, Defendant claims there is no genuine issue of material fact that Plaintiff was not "seized" for purposes of the Fourth Amendment because the parties were joking around at the time

1

of the incident complained of, and the evidence shows that both Plaintiff and Defendant subjectively believed Defendant had disabled his taser to render it incapable of delivering an electric shock before discharging it. Defendant further argues that even if Plaintiff has a cognizable claim, Defendant is entitled to qualified immunity because no reasonable officer would have known that deployment of a taser without either the subjective or objective intent of restraining an individual's movement would violate the Fourth Amendment.

Having reviewed Defendant's motion and accompanying exhibits, Plaintiff's response, Defendant's reply, and the remainder of the record, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Defendant's motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This Opinion and Order sets forth the Court's ruling.

## II.     FACTUAL BACKGROUND

For the purposes of the present motion, the Court accepts the Plaintiff's version of the facts.

On October 22, 2008, while awaiting a court appointment at the counter of the Friend of the Court Division at the Macomb County Courthouse, Plaintiff Robert Crosby, who is an attorney, engaged in a conversation with Defendant David Abbot, a Macomb County Deputy Sheriff. Abbot was working security at the courthouse at the time.

Plaintiff describes his conversation with Defendant Abbot as "friendly and jovial" in nature.

At some point in the conversation, Defendant withdrew his taser from his side holster, removed a part from it, and pointed it at Plaintiff. Plaintiff saw Defendant remove a part of the taser, laughed and said, "Go ahead," when Defendant pointed it at him. Thinking he had disarmed the taser, Defendant pulled the trigger. The taser, however, had not been disarmed; Plaintiff was hit with a dart and received an electric shock that caused him to slump onto the counter in front of him. Plaintiff thereafter initiated this lawsuit.

### III. DISCUSSION

#### A. APPLICABLE STANDARDS

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56[ ] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials,

but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Moreover, any supporting or opposing affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The rules further state that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack*, 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

The Court will apply the foregoing standards in deciding Defendant's Motion for Summary Judgment in this case.

**B.    PLAINTIFF HAS FAILED TO ESTABLISH A COGNIZABLE CLAIM OF VIOLATION OF HIS FOURTH AMENDMENT RIGHTS**

**1.    Plaintiff has failed to establish that he was "seized" for purposes of the Fourth Amendment**

To successfully state a claim under 42 U.S.C. § 1983, Plaintiff "must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55, 101 L. Ed. 2d 40 (1988)). The

parties do not contest that Defendant was acting under color of law at the time of the incident.[1] Accordingly, the Court will turn its attention to the determination of whether Plaintiff has demonstrated a constitutional violation of his right to be free from excessive force.

The first step in addressing an excessive force claim brought under § 1983 is to identify the specific constitutional right allegedly violated by the application of force. *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 1870 (1989). The Court in *Graham* rejected the notion that all excessive force claims were to be analyzed under the same standard, instead instructing courts to begin the analysis by identifying the specific constitutional amendment allegedly violated, and then to analyze the claim under the standard governing that right. *Id.* at 393-94. While the Court in *Graham* recognized the legitimacy of some excessive force claims under the substantive due process clause of the Fourteenth Amendment, it instructed that, whenever possible, excessive force claims must be analyzed under one of the two amendments which provide "an explicit textual source of constitutional protection, " i.e., either the "Fourth Amendment's prohibition

---

[1] An actor does not need to be acting within his lawful authority to be acting under color of law; "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law.' " *Monroe v. Pape,* 365 U.S. 167, 183-84 (1961) (quoting *U.S. v. Classic*, 313 U.S. 299, 326 (1941)); *see also, Cassady v Tackett,* 938 F2d 693, 695 (6th Cir. 1991) (holding that defendant who threatened a co-worker with a gun at the jail where they both worked was acting under color of state law when it was only his position as a jailor that allowed him to possess a weapon on the premises). In this case, it was arguably only Defendant's authority as a law enforcement officer which allowed him to possess the taser in the courthouse with which he allegedly shot Plaintiff.

against unreasonable seizures of the person, [2] or the Eighth Amendment's ban on cruel and unusual punishments."[3] *Id* at 394-95 & n.10.

Thus, where a plaintiff complains of excessive force "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen," the claim must be analyzed under the Fourth Amendment's objective reasonableness standard, rather than the Fourteenth Amendment's substantive due process provision. *Graham,* 490 U.S. at 395, 109 S.Ct. at 1871. There is no evidence in this case showing that Plaintiff was arrested or investigated. Therefore, the issue is whether or not Plaintiff was otherwise "seized" for the purposes of the Fourth Amendment.

## a.      The Requirements of Seizure under the Fourth Amendment

In order to successfully invoke § 1983 liability under the Fourth Amendment on these facts, Plaintiff must show both that he was seized, and that the seizure was unreasonable. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989).

A person is seized for the purposes of the Fourth Amendment "when an officer 'by means of physical force or show of authority, terminates or restrains his freedom of movement through means *intentionally* applied.'" *United States v. Jones*, 673 F.3d 497,

---

[2] The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV.

[3] The Eighth Amendment's proscription against cruel and unusual punishment was designed to apply only to punishment for criminal convictions. Therefore, it is not the appropriate standard here. *Galas v. McKee*, 801 F.2d 200, 205 (6th Cir. 1986) (citing *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16 (1979); *Ingraham v. Wright,* 430 U.S. 651, 664 (1977); *Roberts v. City of Troy,* 773 F.2d 720, 722-23 (6th Cir.1985)).

501 (6th Cir. 2012) *cert. denied*, 133 S. Ct. 350 (2012) (quoting *Brendlin v. California,* 551 U.S. 249, 254 (2007) (internal citations and quotation marks omitted; emphasis added)). However, a "Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement . . . , nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement . . . , but only when there is a governmental termination of freedom of movement *through means intentionally applied.*" *Rodriguez v. Passinault*, 637 F.3d 675, 680 (6th Cir. 2011) (quoting *Brower v. Cnty. of Inyo,* 489 U.S. 593, 596–97 (1989) (emphasis in original; internal quotations omitted)). In order for the means terminating the individual's movement to have been "intentionally" applied, "the detention or taking *itself* must be willful. This is implicit in the word 'seizure,' which can hardly be applied to an unknowing act." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596, 109 S. Ct. 1378, 1381 (1989) (emphasis added).

Whether the Defendant intended to seize Plaintiff must be determined by reference to an objective standard, from the viewpoint of a reasonable person in Plaintiff's position. *Brendlin v. California*, 551 U.S. 249, 260-61, 127 S. Ct. 2400, 2409 (2007). ("The intent that counts under the Fourth Amendment is the 'intent [that] has been conveyed to the person confronted,' and the criterion of willful restriction on freedom of movement is no invitation to look to subjective intent when determining who is seized." *Id.* (quoting *Michigan v. Chesternut*, 486 U.S. 567, 575, n.7 (1988) (internal citation omitted))).

Under normal circumstances involving a police officer's use of a weapon, shooting an individual with a taser likely would constitute a seizure, as by design, tasers are intended to restrain the movements of an individual in order to allow officers to subdue them and gain compliance.[4] Certainly, if Defendant had manifested the intent to shoot Plaintiff with a *loaded* taser intending to restrain his movement, this would constitute a seizure. However, based on the Plaintiff's factual account -- which the Court must accept as true at the summary judgment stage -- the Court finds there is no genuine dispute that Defendant did not intend to seize Plaintiff, thus no violation of the Fourth Amendment has been shown.

In his Motion for Summary Judgment, Defendant does not dispute that he pointed his taser at Plaintiff and pulled the trigger. It is further undisputed that a dart from Defendant's taser was thus deployed, struck Plaintiff, delivered an electrical charge, and caused him to fall onto the counter in front of him. Accepting these facts as true, there is no question that Plaintiff's movements were restrained by the force applied by Defendant. However, this does not end the inquiry. *Brower* requires that the seizure itself be desired. 489 U.S. at 596. The question of intent in this case is whether a

---

[4] *See e.g., Thomas v. Plummer*, 489 F. App'x 116, 125 (6th Cir. 2012) ("A taser is an electric stun-gun. In dart mode, it uses metal-tipped "probes" to deliver an electric shock, causing temporary paralysis and intense pain. Although, some argue, it is a relatively safe and highly effective law-enforcement tool, a taser nevertheless intrudes upon the victim's physiological functions and physical integrity in a way that other non-lethal uses of force do not. Especially with the newer tasers, the nature and quality of their intrusion on the individual's Fourth Amendment interests is somewhat unique in that they render even the most pain tolerant individuals utterly limp. Put simply, tasers ... constitute an intermediate or medium, though not insignificant, quantum of force." (internal citations and quotation marks omitted)).

reasonable person would believe Defendant manifested an intent to shoot Plaintiff with a loaded taser -- thus "seizing" him -- when he removed a cartridge from the taser before pulling the trigger, with Plaintiff's encouragement, in the context of an apparent joke. Defendant asserts that he did not intend to seize the Plaintiff, and that the evidence demonstrates that tasing was unintended and accidental. The record shows that both Defendant and the Plaintiff subjectively believed that Defendant had effectively disabled the taser's ability to deliver a charge when he removed a cartridge from the weapon before pulling the trigger. Further, Plaintiff's own behavior -- laughing and saying, "Go ahead," when Defendant pointed the taser at him after removing part of it -- demonstrates that the two were joking and that both Plaintiff and Defendant believed that Defendant's pulling the trigger would be harmless as Defendant appeared to have disabled the taser before pointing it at the Plaintiff.

Though the evidence might show Plaintiff subjectively believed Defendant had disabled the taser when he removed a cartridge in the moments before Plaintiff was shot, this is not, in and of itself, dispositive. The test is not subjective; rather, it is based on what a reasonable person in Plaintiff's position would have believed. *See e.g., Brendlin,* 551 U.S. at 260-61, *Chesternut*, 486 U.S. at 574. Likewise, Plaintiff's statement in his complaint that "[i]t was later determined that this was an attempted practical joke by ABBOTT, and that ABBOTT mistakenly believed that the removal of the charging cartridge on the tazer [sic] disabled it," does not necessarily foreclose the possibility that a reasonable person in Plaintiff's position at the time of the incident would nevertheless

have believed Defendant intended to tase him when he pointed the taser at him, pulled the trigger, and hit him with a charged dart. Determinations of intent are ordinarily a matter for the jury. *Walker v. Davis*, 643 F. Supp. 2d 921, 929 (W.D. Ky. 2009) *aff'd*, 649 F.3d 502 (6th Cir. 2011) (quoting *Proffitt v. Anacomp, Inc.,* 747 F. Supp. 421, 427 (S.D. Ohio 1990) ("Often, motivation and intent can only be proved through circumstantial evidence; determinations regarding motivation and intent depend on complicated inferences from the evidence and are therefore peculiarly within the province of the factfinder.") (quotation omitted)). Further, at the summary judgment stage, all reasonable inferences must be drawn in favor of the non-moving party, and the reasonable inference that Defendant intended to disable the taser when he removed a cartridge cannot be drawn in his favor.

However, Defendant has asserted that Plaintiff conceded the incident was accidental and has properly supported this assertion with citations to evidence on record. Once he did so, to withstand summary judgment, the burden shifted to Plaintiff to demonstrate a genuine dispute of material facts by citing to evidence in the record. Fed. R. Civ. P. 56(c); *see also Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 n. 17 (6th Cir.1990) (collecting cases stating non-movant must defend its position by presenting affirmative evidence in order to defeat summary judgment).

Plaintiff, however, has failed to contest Defendant's properly-supported assertions. Had Plaintiff contested the issue of Defendant's intent and properly supported his response with citations to evidence in the record, it is perhaps possible that he could have

demonstrated a genuine dispute as to whether Defendant intended to seize him when he shot the taser. However, it is not the Court's duty to "scour the record" in search of facts, nor to speculate about potential genuine disputes. *See e.g., Wimbush v. Wyeth,* 619 F.3d 632, 638 n. 4 (6th Cir.2010) (noting it is not the district court's duty to search the record, rather, it is the parties' duty to cite to the evidence with "specificity and particularity … [and t]he non-moving party must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor.") *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial; *LidoChem, Inc. v. Stoller Enterprises, Inc.*, 500 F. App'x 373, 388-90 (6th Cir. 2012) (Thapar, J., dissenting) ("Courts do not engage in a self-directed inquiry into the facts because district judges are not pigs, hunting for truffles." (quoting *Emerson v. Novartis Pharm. Corp.,* 446 F. App'x. 733, 736 (6th Cir.2011) (internal citation and quotation omitted)).

Apparently failing to appreciate the importance of the threshold issue of seizure, Plaintiff fails to address it at all in any meaningful way. Plaintiff's sole mention of intent is an allegation -- without any citation to evidence in the record -- that he was "intentionally subject to the Taser deployment of . . . Defendant Abbot." [Plaintiff's Brief in Opposition, p. 3]. His further attempts at demonstrating the existence of a genuine

dispute of material fact are two bare assertions -- also completely bereft of any citation to facts in the record -- that "[f]actual doubt remains regarding whether Defendant was 'joking,' so we must assume for purposes of summary judgment that the fact that Plaintiff was posing no threat is true," [Plaintiff's Brief, p. 8], and that "there is a genuine issue of material fact as to whether Defendant employed excessive force." [*Id*. at p. 9].

Thus, Plaintiff's focus in his response is on the reasonableness of the use of force. Plaintiff is correct in one respect: if this case were to proceed to analysis under the Fourth Amendment's objective reasonableness standard, evidence that Abbot's actions were unreasonable would be relevant.[5] However, in order to enjoy the protections of the Fourth Amendment's objective reasonableness standard, Plaintiff first must prove, by a preponderance of the evidence, that the Defendant intended to shoot him with a loaded, operational taser, thus seizing him by terminating or restraining his movement by means of physical force intentionally applied. *Brendlin*, 551 U.S. at 254. Plaintiff has utterly

---

[5] Under *Graham*, the three factors to be considered in deciding reasonableness are the severity of the crime at issue, whether the suspect poses a threat to the officers or others, and whether he was actively resisting arrest. *Id.,* 490 U.S. at 396. All three factors weigh strongly against Defendant's use of force. Plaintiff was not suspected of or being investigated for committing a crime, nor was any arrest taking place, thus he was not actively resisting or attempting to evade arrest. Further, there is no evidence on the record to suggest Plaintiff was posing a threat to the officer or others. Rather, the facts suggest that there were no valid law enforcement reasons for Defendant's actions, and under a Fourth Amendment standard, would clearly have been unreasonable. *See, e.g., Thomas v. Plummer*, 489 F.App'x 116, 125 (6th Cir. 2012) (unpublished opinion) (quoting *Wysong v. City of Heath*, 260 F. App'x 848, 856 (6th Cir. 2008) ("[T]he right [generally] to be free from physical force when one is not resisting the police [was] ... clearly established," at least as of July 13, 2002.) and citing *Kijowski v. City of Niles*, 372 F. App'x 595, 601 (6th Cir. 2010) (extending the rule to the use of tasers, and holding that a non-resistant suspect had a clearly established right not to be tased as of at least October 28, 2006). However, as Plaintiff has failed to show that his claim properly lies under the Fourth Amendment, he does not enjoy the protections of the reasonableness standard.

failed to carry this burden. Plaintiff's merely assumes seizure without pointing to any facts to establish this critical element of his claim.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Plaintiff here has plainly failed to dispute Defendant's assertions. Therefore, based on the record evidence, the Court finds that it is undisputed that Defendant did not intend to shoot Plaintiff with a loaded taser, or to otherwise seize him when he discharged his weapon in the context of a jovial, consensual exchange.

Based upon the foregoing, the Court finds that Plaintiff was not seized for the purposes of the Fourth Amendment. Therefore, the Court concludes Plaintiff has failed to make out any cognizable claim of deprivation of his rights under the Fourth Amendment.[6]

## C. PLAINTIFF HAS NOT MADE OUT A FOURTEENTH AMENDMENT CLAIM

In his Complaint, Plaintiff alleged only a single claim: that his "right to be free from unreasonable searches and seizures, and to be secure in his person as provided by the 4th and 14th Amendments to the U.S. Constitution, and not to be subject to excessive force" was violated. [Plaintiff's Complaint, p. 3]. Though he mentions the Fourteenth Amendment, it does not appear that Plaintiff intended to plead a separate claim under the

---

[6] Because Plaintiff has failed to make out claim of violation of the Fourth Amendment, there is no need to address Defendant's assertion of qualified immunity as to this claim.

Fourteenth Amendment, and neither party has treated the alleged violation of the Fourteenth Amendment as a separate claim.  Plaintiff did not list the claim in a separate count, nor did he ever allege that his rights to liberty or substantive due process were violated, so as to indicate that he intended to argue a Fourteenth Amendment violation, in addition to, or as an alternative to, his Fourth Amendment claim.  It therefore appears to the Court that Plaintiff mentioned the Fourteenth Amendment merely as the means to invoke the protections of the Fourth Amendment against a state actor.  However, even assuming, *arguendo,* that it was Plaintiff's intent to separately plead a violation of his substantive due process rights, the facts established here do not give rise to a viable claim under the Fourteenth Amendment.

When properly pled, cases alleging excessive force against "nonseized" individuals may be analyzed under the substantive due process component of the Fourteenth Amendment.  *E.g.*, *Dunigan v. Noble*, 390 F.3d 486, 492 n. 7 (6th Cir. 2004) ("Absent a seizure, an individual injured as a result of police misconduct may pursue a substantive due process claim." (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 844(1998))); *Darrah v. City of Oak Park*, 255 F.3d 301, 305-06 (6th Cir. 2001) (stating that excessive force claims which do not fall under the Fourth or Eighth Amendments may be analyzed under the substantive due process clause of the Fourteenth Amendment, but declining to apply this analysis when the Plaintiff did not claim a substantive due process violation (citing *Lewis*, 523 U.S. at 843–44, and quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997))).

The test to determine whether governmental conduct rises to a violation of Fourteenth Amendment substantive due process rights is whether the conduct "shocks the conscience," which is a "substantially higher hurdle" than that required to show a violation of excessive force under the Fourth Amendment's objective reasonableness standard. *Darrah,* 255 F.3d at 306. *See also County of Sacramento v. Lewis,* 523 U.S. 833, 847–50, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). While "deliberate indifference" may rise to conduct that "shocks the conscience," s*ee Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) (quoting *Lewis* 523 U.S. at 852-53), mere negligence does not give rise to a violation of substantive due process; rather, a substantive due process violation requires an intentional act. *Wilson v. Beebe*, 770 F.2d 578, 584, 586-87 (6th Cir. 1985).

Deliberate indifference has been equated with subjective recklessness and requires the § 1983 plaintiff to show that the state "official knows of and disregards an excessive risk to [the victim's] health or safety." *Ewolski v. City of Brunswick*, 287 F.3d 492, 513 (6th Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)). Thus, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer*, 511 at 837). Having drawn the inference, the official must act or fail to act in a manner demonstrating "reckless or callous indifference" toward the individual's rights. *Id.* (quoting *Landol-Rivera v. Cruz Cosme*, 906 F.2d 791, 797 (1st Cir. 1990)). Further, the Supreme Court has made clear that mere negligence is not enough to meet

the deliberate indifference standard. *Lewis*, 523 U.S. at 834. Only the most egregious conduct can be said to be "arbitrary in the constitutional sense." *Id*. at 846 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1962)).

The Court has already ruled, for the purposes of this motion, that it is undisputed that Defendant did not intend to shoot Plaintiff with a loaded, functioning taser. Therefore, applying the "deliberate indifference" standard, the facts established here do not appear to rise to a violation of the Fourteenth Amendment. *See Wilson v. Beebe*, 770 F.2d 578, 580-81, 584, 586-87 (6th Cir. 1985) (officer who accidentally shot and seriously injured arrestee while negligently holding his cocked handgun in one hand as he applied handcuffs, contrary to his training and state procedure, did not violate substantive due process); *see also Slusher v. Carson*, 488 F. Supp. 2d 631, 640 (E.D. Mich. 2007) *aff'd on other grounds*, 540 F.3d 449 (6th Cir. 2008) (conscience was not shocked even under a "deliberate indifference" standard when Deputy allegedly grabbed Plaintiff's hand to retrieve paperwork, and "pressed his thumb into [her] hand, [her] palm, squeezed the back and twisted [her] fingers back and around," causing her to lose the use of her hand for several months, impairing her range of motion, grip strength and fine motor skills). *But see, Robles v. Prince George's Cnty., Maryland*, 302 F.3d 262, 267, 269-70 (4th Cir. 2002) (finding a violation of substantive due process even without a showing of intent to punish because the defendant officers' actions did not serve any legitimate government purpose when the officers, purportedly playing a prank on officers in the local jurisdiction to which they were attempting to transfer arrestee, tied plaintiff to a

16

pole in a deserted parking lot and abandoned him there in the middle of the night, then reported his presence to local police who took him into custody 10-15 minutes later.). Thus, even assuming *arguendo* that Plaintiff intended to allege a separate claim of violation of substantive due process under the Fourteenth Amendment, the record facts surrounding the actions complained of here fail to establish such a claim.

## IV.     CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' October 31, 2012 Motion for Summary Judgment **[Dkt. # 15]** is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Complaint be DISMISSED, in its entirety, with prejudice.

Let Judgment be entered accordingly.


Dated:  August 23, 2013         s/Gerald E. Rosen
                                GERALD E. ROSEN
                                CHIEF, U.S. DISTRICT COURT


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 23, 2013, by electronic and/or ordinary mail.

                                s/Julie Owens
                                Case Manager, 313-234-5135